**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| EDUARD SHLAHTICHMAN, | ) | |
| individually and on behalf of a class, | ) | |
| Plaintiff, | ) | 09 CV 4032 |
| | ) | |
| v. | ) | Judge Darrah |
| | ) | |
| 1-800 CONTACTS, INC., | ) | |
| Defendant. | ) | |

**PLAINTIFF'S BRIEF IN OPPOSITION
TO DEFENDANT'S RULE 12(b)(6) MOTION TO DISMISS**

Plaintiff, Eduard Shlahtichman (hereafter "Plaintiff"), submits this response in opposition to Defendant's Rule 12(b)(6) Motion to Dismiss Plaintiff's Class Action Complaint.

**INTRODUCTION**

Defendant violated FACTA after the Clarification Act's recent enactment by printing prohibited information on credit/debit card receipts. Defendant's receipts, provided to customers as part of on-line transactions, print personal information including a customer's name, email address, billing address, credit card company, and the customer's expiration date. By including the customer's credit card expiration date, Defendant indisputably violates FACTA. The only remaining issue for trial is whether Defendant's violations are willful. Nevertheless, Defendant seeks dismissal.

First, Defendant argues that its receipts are not subject to FACTA's truncation requirements because Defendant did not physically print a piece of paper entitled "receipt" and Plaintiff's receipt of an email at home is not the "point of sale." Defendant is incorrect. In fact, this Court denied a Rule 12(b)(6) motion to dismiss in nearly identical circumstances. *Harris v. Wal-Mart Stores, Inc.*, No. 07 CV 2561, 2007 WL 3046162 (N.D. Ill. Oct. 10, 2007) (Darrah, J.)

(rejecting Rule 12(b)(6) motion in a case involving a computer generated receipt that displayed the credit card's expiration date thereby violating FACTA while finding defendant's arguments regarding the word "print" as "premature" and more appropriate to a summary judgment motion) (Exhibit A).  Other courts within this District have also rejected Defendant's arguments for other reasons.  *Romano v. Active Network Inc.*, No. 09 C 1905, 2009 WL 2916838 (N.D. Ill. Sept. 3, 2009) (Der-Yeghiayan, J.) ("During an internet transaction, such as the one at issue in this case, ANI published the information in the same way that it would have done had it handed Romano a paper receipt in person.") (Exhibit B); *Harris v. Best Buy Co., Inc.*, 254 F.R.D. 82 (N.D. Ill. 2008) (St. Eve, J.) (examining term "electronically printed" in FACTA under dictionary definition of "print" and concluding that computer display is included while also certifying class of "online" customers while ruling that "Best Buy's argument … fails because each class member is not required to print a hard copy of their receipt to have a cognizable claim under Section 1681c(g).").  *See also Harris v. Circuit City Stores, Inc.,* No. 07 C 2512, 2008 WL 400862, *1-*2 (N.D. Ill. Feb. 7, 2008) (certifying class of online customers) (Schenkier, J.) ("It is undisputed that … Circuit City's online system at www.circuitcity.com 'generated an email confirmation of the transaction'" … "There is no dispute that, … the email … display[ed] the expiration date on [plaintiff's credit] card….") (Exhibit C).  Other courts are in accord.  *Grabein v. 1-800-Flowers.com*, Inc., No. 07-22235-CIV, 2008 WL 343179, *3 (S.D. Fla. 2008)("[T]he Court finds that the ordinary meaning of the term "print" encompasses the information included when a seller electronically transmits a receipt.") (Exhibit D); *Ehrheart v. Bose Corp.*, Civil Action No. 07-350, 2008 WL 64491, *6 (W.D. Pa. Jan. 4, 2008) ("Where internet shopping is a significant component of the total retail market, the court is not persuaded that Congress intended this exclusion."); *Vasquez-Torrez v. Stubhub*, Case No., CV 07-1328 PSG, 2007 U.S.

Dist. Lexis 63719, *9 (C.D. Cal. 2007) ("Furthermore, had Congress desired such an exclusion, they would have explicitly done so, as they did for 'transactions in which the sole means of recording a credit card or debit card account number is by handwriting or by an imprint or copy of the card.' ") (Exhibit E).

Second, Defendant argues, "[a]s a matter of law, any FACTA violation Defendant theoretically might have committed cannot have been 'willful,' because it was objectively reasonable for 1-800 CONTACTS to believe that FACTA does not apply to e-mails like those involved here." (Doc. 17, p. 13)  Defendant has failed to show that Plaintiff's interpretation of either "print" or "point of sale" as used in § 1681c(g) is unreasonable, and Defendant therefore cannot establish that Plaintiff could not recover as a matter of law based on the facts he has alleged.  Further, Plaintiff has sufficiently pleaded "willfulness" under the Act.  *Romano*, 2009 WL 2916838, *3.  Because Plaintiff has stated a legally cognizable claim under § 1681c(g), the Court should deny Defendants' Motion to Dismiss.

## **LEGAL STANDARD**

In ruling on a motion to dismiss, a court must "take all of the factual allegations in the complaint as true" and make reasonable inferences in favor of the plaintiff. *Ashcroft v. Iqbal,* 129 S.Ct. 1937, 1949 (2009); *Thompson v. Ill. Dep't of Prof'l Regulation,* 300 F.3d 750, 753 (7th Cir. 2002); *McMillan v. Collection Prof'ls Inc.*, 455 F.3d 754, 758 (7th Cir. 2006).  To avoid dismissal under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."  *Iqbal,* 129 S.Ct. at 1949 (internal quotations omitted) (emphasis in original) (quoting in part *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 570 (2007)); *Hecker v. Deere & Co.,* 569 F.3d 708, 710-11 (7th Cir.2009) (stating that *"Iqbal* reinforces *Twombly'* s message that '[a] claim has facial plausibility when the plaintiff

pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged' ") (quoting *Iqbal,* 129 S.Ct. at 1949). A plaintiff is not required to "plead facts that, if true, establish each element of a 'cause of action....'" *Sanjuan v. Amer. Bd. of Psychiatry and Neurology, Inc.,* 40 F.3d 247, 251 (7th Cir.1994) (stating that "[a]t this stage the plaintiff receives the benefit of imagination, so long as the hypotheses are consistent with the complaint" and that "[m]atching facts against legal elements comes later"). "Rule [8(a)] reflects a liberal notice pleading regime, which is intended to 'focus litigation on the merits of a claim' rather than on technicalities that might keep plaintiffs out of court." *Brooks v. Ross*, No. 08-4286, --- F.3d ----, 2009 WL 2535731, *4 (7th Cir. Aug. 20, 2009) (quoting *Swierkiewicz v. Sorema N.A.,* 534 U.S. 506, 514 (2002)) (Exhibit F).

## I.      FACTA APPLIES TO ONLINE RECEIPTS AND TRANSACTIONS

### A.      FACTA's Plain Language Broadly Encompasses "Any" "Electronically Printed Receipt."

Defendant argues, "Plaintiff's Complaint fails because the purported 'receipt' in this case is an e-mail confirmation … [and] the FACTA truncation requirement applies only to 'printed' receipts provided by the retailer." Doc. 17, p. 4. Defendant cannot deny that it printed impermissible information on a receipt provided to Plaintiff. Although FACTA does not define "print," it is commonly defined as: (a) "to display on a surface (as a computer screen) for viewing*," see* Merriam-Websters Collegiate Dictionary, 10th ed. P. 924 (2002). *See Romano*, 2009 WL 2916838, *2. The Seventh Circuit instructs the courts to "look to dictionaries to determine the plain meaning of words, and in particular we look at how a phrase was defined at the time the statute was drafted and enacted." *Sanders v. Jackson*, 209 F.3d 998 (7th Cir. 2000).[1]

---

[1]      Defendant's definitions do not reveal whether they were in use when FACTA was drafted and enacted. Doc. 17, p.5. Further, Defendant cites to the online Oxford-English Dictionary

Defendant—which has complete control over what it prints on receipts—decided to print cardholder expiration dates on receipts.  It provided the receipts electronically through email.  Numerous courts, including this one, have concluded that internet transactions are subject to FACTA's truncation requirements.  *See Wal-Mart Stores*, 2007 WL 3046162 (rejecting Defendant's Rule 12(b)(6) motion to dismiss in FACTA case related to transactions occurring at www.walmart.com); *Romano*, 2009 WL 2916838; *Best Buy*, 254 F.R.D. 82 (applying FACTA to transactions at www.bestbuy.com); *Circuit City,* 2008 WL 400862, *1-*2 (applying FACTA to transactions at www.circuitcity.com);  *Grabein*, 2008 WL 343179, *3 (applying FACTA to transactions at www.1800flowers.com); *Vasquez-Torrez*, 2007 U.S. Dist. Lexis 63719, *9 (applying FACTA to transactions at www.stubhub.com).  One court recently explained:

> There is a great need to protect the security of credit card information during internet transactions. For example, a customer may receive the internet receipt in a public location and other individuals may be able to view the computer screen. Also, thieves may be able to gain unauthorized access to a customer's computer files and will more easily obtain credit card information with lesser security measures. There is nothing in FACTA that states that its sole purpose is to protect in person transactions. The stated purpose of FACTA is "to prevent criminals from obtaining access to consumers' private financial and credit information in order to reduce identity theft and credit card fraud." Pub.L. No. 110-241 (HR 2008), 122 Stat. 1565 (June 3, 2008). The protection of internet transactions would further prevent identity theft and the other problems that FACTA is intended to protect. … Thus, we conclude that Section 1681c(g), consistent with the goal of protecting consumers, covers internet transactions such as the one at issue in the instant action. [*Romano*, 2009 WL 2916838, *2.[2]]

The cases holding that FACTA applies to online transactions/receipts cannot be distinguished from this case.  In all cases, the customers have no input or control as to the information the defendant printed on the receipts.  Customers can do nothing to protect

---

which is only available by subscription.  http://www.oed.com/subscribe/ ("The *Oxford English Dictionary Online* is available by subscription.")

[2]    Plaintiff recognizes, as the *Romano* court recognized, that other courts have taken the opposite position.  Doc. 17, pp. 6-7 (citing cases).  Plaintiff respectfully submits that the reasoning in the cases Plaintiff cites is more persuasive and that Defendant's cited cases were incorrectly decided.

themselves from the risk of identity theft, except to decline to transact additional business with the defendant.  Here, Defendant, not the consuming public, determines what personal information is printed on its receipts.  Consequently, Defendant is responsible when it willfully prints information which violates FACTA.  Defendant asserts an ultra-conservative and highly restrictive interpretation that is inconsistent with the statute, common sense, and the realities of our modern internet-based economy.  The Court should reject Defendant's interpretation.

> **B.      Section 1681c(g) Applies to "Any Receipt."**

Section 1681c(g)'s truncation requirement broadly applies to "any receipt provided to the cardholder…."  As the Supreme Court has recognized, "Read naturally, the word 'any' has an expansive meaning, that is, 'one or some indiscriminately of whatever kind.' … Congress did not add any language limiting the breadth of that word…."  *United States v. Gonzales*, 117 S.Ct. 1032, 1035 (1997) (quoting Webster's Third New International Dictionary 97 (1976)).  *See also Merritt v. Dillard Paper Company,* 120 F.3d 1181, 1186 (11th Cir.1997) ("[W]hen used in a statute, "the adjective ' any' is not ambiguous; it has a well-established meaning.").

Additionally, FACTA expressly applies to "any cash register or other machine or devise that electronically prints …" 15 U.S. § 1681c(g)(3)(A)-(B).  By including the generic phrase "other machine or device" rather than limiting its application to just "cash registers," Congress emphasized its intent for FACTA to cover **all** receipts from any **other machine or device**, except those expressly exempted.  Clearly, a computer and computer network used to electronically transact business qualifies as a "machine or device."  Additionally, printing a credit card receipt on a computer screen falls squarely within the ordinary meaning of the phrase "electronically printed." § 1681c(g)(2).

Judge Der-Yeghiayan recently explained that Congress recognized only one small

limitation on receipts in FACTA:

> We also note that in Section 1681c(g) Congress indicated that the statute "shall apply only to receipts that are electronically printed, and shall not apply to transactions in which the sole means of recording a credit card or debit card account number is by handwriting or by an imprint or copy of the card." 15 U.S.C. § 1681 c(g). In using such language, Congress distinguished between electronically generated receipts as opposed to receipts prepared by hand or by imprints. Obviously, businesses that use electronic equipment are capable of transmitting the full number of the credit card to the credit card processing center in order to receive payment and at the same time are capable of redacting certain numbers of the credit card when providing electronically generated receipts to the consumer in order to protect the consumer. In contrast, businesses where the sole means of recording a credit card number is by hand or by an imprint are exempt under this law because the handwritten or imprinted receipt card number is required to be forwarded to the credit card processing center in order to receive payment, and hence the receipt provided to the customer is a carbon copy of that document containing the full number.  [*Romano*, 2009 WL 2916838, *3.]

*See also Stubhub,* 2007 U.S. Dist. Lexis 63719 ("if congress desired [to exclude online transactions], it would have explicitly done so as it did for transactions in which the sole means of recording a credit card or debit card account number is by handwriting or by an imprint or copy of the card …."); *TRW Inc. v. Andrews,* 534 U.S. 19 (2001) ("Where Congress explicitly enumerates certain exceptions to a general prohibition, additional exceptions are not to be implied, in the absence of evidence of a contrary legislative intent.").  An enumeration of specific exclusions from the statute's application is a good indication that the statute should apply to all situations not specifically excluded.  *Matter of Cash Currency Exchange, Inc.*, 762 F.2d 542 (7th Cir. 1985).

## C.    The "Point Of Sale" Includes The Location Of Buyers' Computers.

Defendant argues that "point of sale" "cannot refer to e-commerce, but rather only to printed, paper receipts provided at a physical retail location where a transaction occurs." Doc. 17, p. 12.  In light of the fact that e-commerce was already prevalent when Congress debated and enacted FACTA in 2003, its decision to not exclude internet transactions speaks volumes and

contradicts Defendant's absurd position.

> Congress did not say that the statute applied with respect to any "receipts" provided in person, but stated that it applied with respect to any "cash register or other machine or device that electronically prints receipts for credit card or debit card transactions...." 15 U.S .C. § 1681c(g).  Thus, we conclude that Section 1681c(g), consistent with the goal of protecting consumers, covers internet transactions such as the one at issue in the instant action.  [*Romano*, 2009 WL 2916838, *3.]

> The court finds that the surrounding facts and the general purposes underlying FACTA favor the Plaintiff's broader reading of the phrase "point of sale." … Reading the term narrowly to refer to the interior of a store, or even more narrowly to mean a particular cash register or ATM machine raises the likelihood of absurd results that depend more on serendipity than on any rational reading of the law.  … If the court were to adopt the Defendant's interpretation of FACTA, the statute would not reach the theft of information secured as the result of an online transaction, because buyers' computers are located outside of-maybe thousands of miles from-the retail premises. [footnote omitted] Where internet shopping is a significant component of the total retail market, the court is not persuaded that Congress intended this exclusion. In sum, the court is not convinced by the Defendant's argument, and would not adopt its narrow reading of 15 U.S.C. § 1681c(g).  [*Ehrheart*, 2008 WL 64491, *5-6.]

Even if "point of sale" means the physical place where the transaction is consummated, then the transaction at issue here is still covered by FACTA.  The physical place where the transaction occurred is wherever Defendant's consumers make the on-line purchase.  *Interactive Gift Express, Inc. v. CompuServe Inc.,* 256 F.3d 1323 (2001) (the "point of sale" location is simply wherever the consumer makes or effects a purchase).[3]  The application of this meaning only makes sense since Defendant does not have a physical brick and mortar location.  You cannot go to a 1-800-Contacts store and purchase contact lenses.  Defendant's narrow interpretation of this term would basically give it a free pass to violate FACTA all it wants. Clearly this was not Congress's intent.  A modern analysis of point-of-sale unquestionably

---

[3]        *General Motors Corp., v. Keystone Automotive Indust.,* 453 F.3d 351, (6th Cir. 2006) (the court ruled in a trademark infringement action that "point of sale" refers to the time of the purchase without regard to the purported place of a transaction.  There, the court noted that the "point of sale" for the potentially infringing merchant included both physical stores and direct to consumer internet sales).

includes the Defendant's internet transactions.

**D.    The Legislative History Supports FACTA's Application to Online Transactions and Receipts.**

FACTA's legislative history establishes that the law includes internet transactions.  The

Senate's Banking, Housing and Urban Affairs Committee conference report concluded:

> The burgeoning **use of the Internet and advanced technology**, coupled with increased investment and expansion, has intensified competition within the financial sector.  Although this provides benefit to the consumer through readily available credit and consumer-oriented financial services, it also creates a target-rich environment for today's sophisticated criminals, many of whom are organized and operate across international borders.  [S. Rep. 108-166, 2003 WL 22399643, *8 (10/17/03) (emphasis added).[4]]

Similarly, the House Committee conference report concluded:

> Since 1996, the national credit markets have undergone significant change.  Most of **these changes were the result of technological innovations** … Despite the myriad benefits of technology to the American consumer, there has been one drawback.  Namely, **the free flow of information has enabled the explosive growth of a new crime – identity theft**.  [H. R. Conf. Rep. 108-396, 2004 U.S.C.C.A.N. 1753, 2003 WL 22761472 (11/21/03) (emphasis added).]

Additionally, the opening sentence of FACTA, Public Law 108-159, later codified in the

U.S. Code, states, "**An Act to amend the Fair Credit Reporting Act, to prevent identity theft**

…."  P.L.108-159, 117 Stat. 1952 (Emphasis Added).  Thus, Defendant's argument—that

FACTA does not apply to internet transactions and receipts—is illogical and unreasonable given

Congress' overwhelming concern that the internet is being used as a tool by identity thieves.

---

[4]    The FTC has been very clear about the extraordinary dangers posed by having credit card information on the internet:  "Finally, a third change in our approach to privacy is the scope of our concerns.  The FTC's previous efforts were focused on addressing consumer's concerns about online data collection.  If the concern is reducing adverse consequences that can occur when information is misused, then it does not matter whether information is originally collected online or off-line.  It simply matters if it is misused.  The risk of identity theft for example is no less real and its consequences no less different than if a thief steals your  credit card number from a website or from the mailbox in the front of your home."  *Protecting Consumer's Privacy: Goals and Accomplishments*, Remarks of FTC Chairman Timothy J. Muris At The Networked Economy Summit, Reston, Virginia, June 11, 2002 (full text Exhibit G).

The legislative history identifying the stated purpose of this statute supports Plaintiff's position that FACTA applies to the instant case.  No other rational conclusion can be drawn.

Finally, Congress recently passed "The Clarification Act," rescuing merchants that had included expiration dates on receipts from civil liability.[5]  While the Act has no effect on this case, because Plaintiff challenges later receipts, the absence of any recitals or clarifications regarding the applicability of FACTA to internet transactions is telling.  During the time the Clarification Act was introduced (October 2007) and enacted (May 2008) the business community and Congress knew a significant percentage of FACTA cases were pending against online retailers.  Nevertheless, Congress chose not to provide any exception for online retailing.

The Clarification Act's language and its legislative history show that it was intended to protect merchants only during the extra grace period.[6]  After the second grace period of June 3, 2008, merchants are still required to comply with FACTA's requirements of truncating credit card numbers and expiration dates from credit card receipts.  This is also evidenced by the fact that Congress did not eliminate or strike down altogether § 1681(c)(g) requiring that expiration dates be truncated.  The Clarification Act simply amended the section dealing with willful non-compliance, § 1681(a), so that merchants that otherwise were trying to comply with FACTA but failed to remove the expiration date on credit card receipts would not be subject to liability for

---

[5]     *See Harris v. Mexican Specialty Foods, Inc.*, 564 F.3d 1301 (11th Cir. 2009); *Wilson v. H & R Block Enterprises, Inc.*, Nos. 07-0437-CV-W-ODS, 07-0599-CV-W-ODS, 2009 WL 32584 (W.D. Mo. 2009) (Exhibit H); *Sieber v. Havana Harry's II, Inc.*, 604 F.Supp.2d 1368 (S.D. Fla. 2009); *Curiale v. Lenox Group, Inc.,* Civil Action No. 07-1432, 2008 WL 4899474 (E.D. Pa. 2008) (Exhibit I).

[6]     The legislative history to the Clarification Act provides "A bill (H.R. 4008) … to make technical corrections to the definition of willful non-compliance with respect to violations involving a printing of an expiration date on certain debit and credit card receipts before the date of the enactment of this Act.  H.R. 4008 is a narrow, common sense bill that will smooth the transition to new rules for printing credit card receipts under … FACTA.  Going forward, companies will still have to meet the same strict rules Congress originally passed in FACTA." Credit and Debit Card Receipt Clarification Act of 2007, 122 Stat 1565.

willful non-compliance, but <u>only</u> up to the date of the Clarification Act's enactment.  "[T]he

clear terms of the statute placed no limits on liability for acts occurring after June 3, 2008."

*Steinberg v. Stitch & Craft*, No. 09-60660-CIV, 2009 WL 2589142, *3 (S. D. Fla. Aug. 18,

2009) (<u>Exhibit J</u>).

## II.      Plaintiff Has Adequately Alleged "Willfulness."

Defendant argues that "[a]s a matter of law, any FACTA violation Defendant

theoretically might have committed cannot have been 'willful,' because it was objectively

reasonable for 1-800 CONTACTS to believe that FACTA does not apply to e-mails like those

involved here."  (Doc. 17, p. 13)  Defendant points to this Court's decision in *Harris v. Wal-Mart*

*Stores, Inc.*, No. 07 CV 2561, 2008 WL 5085132 (N.D. Ill. Nov. 25, 2008) (Darrah, J.) (<u>Exhibit</u>

<u>K</u>).  Defendant fails to mention that the opinion concerned a pre-Clarification Act (June 3, 2008)

receipt dated May 5, 2007, while the present case involves a June 3, 2009 receipt.  *See Barbieri*

*v. Redstone American Grill Co., Inc.*, No. 07 C 5758, 2009 WL 290467 (N.D. Ill. 2009)

(Manning, J.) (granting summary judgment to Defendant in a case involving 2007 receipts

because "the express language of the Clarification Act effectively eliminated any claim for

willful violation of FACTA based on the alleged failure to delete the expiration date from a

receipt issued between December 4, 2004 and June 3, 2008, the effective date of the Act.")

(<u>Exhibit L</u>).[7]

Defendant next argues that "[t]he same factors that controlled the *Safeco* decision here

apply … [and Defendant's] understanding of the statute is 'not objectively unreasonable,'

Plaintiff cannot plausibly allege willfulness and dismissal is proper." (Doc. 17, p. 15).

Defendant is incorrect.

---

[7]      Defendant admits that the Clarification Act "made clear that printed receipts reflecting
expiration dates could not support a fining of willfulness, at least for receipts printed prior to
June 3, 2008." (Doc. 17, p. 4).  This case is only about receipts printed after that point.

"Willfulness" includes both reckless and knowing violations of the statute.[8] *Safeco Ins. Co. of America v. Burr*, 127 S.Ct 2201, 2208-09 (2007) ("We have said before that 'willfully' is a 'word of many meanings whose construction is often dependent on the context in which it appears' … [W]here willfulness is a statutory condition of civil liability, we have generally taken it to cover not only knowing violations of a standard, but reckless ones as well." *Id*. "The standard civil usage thus counsels reading the phrase 'willfully fails to comply' in § 1681n(a) as reaching reckless FCRA violations….").

Here, Plaintiff sufficiently alleges willfulness. The Complaint alleges that FACTA was enacted in 2003 and gave merchants three years—to December 4, 2006—to come into compliance with the law's requirements before they could be sued. (Class Action Complaint, ¶¶ 7, 29-30.) The Complaint alleges that on June 3, 2008, the Credit and Debit Card Receipt Clarification Act of 2007 was enacted by Congress "to make technical corrections to the definition of willful noncompliance with respect to violations involving the printing of an expiration date" on receipts printed before June 3, 2008. *Id.*, ¶¶ 8, 30. The Complaint alleges that Defendant "willfully violated" the Clarification Act by printing credit/debit card expiration dates on receipts after June 3, 2008. *Id.*, ¶ 10.

The Complaint alleges that the FTC has enacted rules governing the interpretation of FACTA. *Id.*, ¶ 32 (quoting Bureau of Consumer Protection, Federal Trade Commission, *Slip Showing? Federal Law Requires All Businesses to Truncate Credit Card Information on Receipts* (May 2007)). The Complaint alleges that "[m]ost of defendant's business peers and

---

[8]     If a plaintiff can establish that the defendant "willfully" failed to comply with the FACTA requirements, then he or she can recover actual or statutory damages under the statute. 15 U.S.C. § 1681n(a) ("Any person who *willfully* fails to comply with any requirement imposed under this subchapter with respect to any consumer is liable….") (emphasis added). The consumer may get either actual damages or "damages of not less than $100 and not more than $1000." 15 U.S.C. § 1681n(a)(1)(A).

competitors readily brought their processes into compliance with FACTA by programming their credit card machines and devices to comply with the truncation requirement" and that "Defendant could have readily done the same" and at very "minimal" cost. *Id.*, ¶¶ 33-34.

These allegations more than plausibly suggest that Defendant willfully violated the statute.  "The willfulness issue cannot always be resolved at the motion to dismiss stage since it may involve facts beyond the pleadings. … Romano has stated a valid FACTA claim and it is premature based on the complaint before us to resolve the willfulness issue. Therefore, we deny ANI's motion to dismiss the willfulness claims. *Romano*, 2009 WL 2916838, *3 (citing the *Safeco* decision).

Defendant conveniently ignores the fact that many district judges, including this Court, mostly after *Bell Atlantic v. Twombly* and/or *Safeco*, have found allegations similar or identical to Plaintiff's to sufficiently allege a claim for a willful violation of Section 1681c(g).  *E.g.*, *Wal-Mart*, 2007 WL 3046162, *2 ("Harris's factual allegations clearly raise the right to relief above a speculative level; and his claim is, therefore, sufficiently plead, within the requirements outlined by the United States Supreme Court in *Bell Atlantic.*"); *In re The TJX Companies, Inc.*, MDL No. 1853, 2008 WL 2020375, *2 n.5 (D. Kan. May 9, 2008) ("Defendants' suggestion that *Bell Atlantic Corp.* [*v. Twombly*] somehow undermines this weight of authority is without merit. Each of the cases applied the plausibility standard set forth in that decision.") (Exhibit M); *Iosello v. Leiblys, Inc.*, 502 F. Supp. 2d 782, 784-85 (N.D. Ill. 2007) (Der-Yeghiayan, J.) ("[W]e conclude that sufficient allegations have been pled … that plausibly suggest that Leiblys willfully violated FACTA."); *Troy v. Home Run Inn, Inc.*, No. 07 C 4331, 2008 WL 1766526, *2 (N.D. Ill. April 14, 2008) (Exhibit N); *Follman v. Village Squire, Inc.*, 542 F. Supp. 2d at 820 (N.D. Ill. Dec. 18, 2007) (Kendall, J.) ("Follman has sufficiently alleged willfulness under this definition.");

*Follman v. Hospitality Plus of Carpentersville, Inc.*, 532 F. Supp. 2d 960, 963 (N.D. Ill. 2007) (Moran, J.) ("We find these allegations plausibly suggest that defendant willfully violated the statute."); *Arcilla v. Adidas Promotional Retail Operations, Inc.,* 488 F. Supp. 2d 965, 971-72 (C.D.Cal.2007) ("Adidas' Conduct is properly alleged to be 'Willfull'" [sic]); *Aeschbacher v. California Pizza Kitchen, Inc.,* No. CV 07-215, 2007 WL 1500853, *3-4 (C.D.Cal. Apr. 3, 2007) ("Defendant's argument lacks merit. … Moreover, 'willfulness' is not an element of the underlying conduct at issue, but merely a prerequisite to the awarding of statutory, as opposed to actual, damages.") (Exhibit O); *Pirian v. In-N-Out Burgers,* No. SA CV 06-1251, 2007 WL 1040864, *7 (C.D. Cal. Apr. 5, 2007) ("Plaintiff has adequately alleged willfulness.") (Exhibit P); *Lopez v. The Gymboree Corp.,* No. C 07-0087, 2007 WL 1690886, *2 (C.D. Cal. June 8, 2007) ("The court finds that these allegations of both knowing and reckless conduct are sufficient to allege 'willfulness' under the FACTA.") (Exhibit Q); *Korman v. The Walking Co.,* 503 F. Supp. 2d 755, 762 (E.D. Pa. 2007) ("Plaintiff has adequately plead 'willfulness'"); *Steinberg*, 2009 WL 2589142, *3-4 ("Plaintiff's complaint sufficiently alleges willful noncompliance…."); *Bauer*, 2008 WL 2261764, *1;  *In re The TJX Companies, Inc.*, 2008 WL 2020375, *2-3 ("In fact, plaintiffs' allegations are typical of FACTA claims, and courts have almost uniformly rejected the argument that such allegations do not sufficiently allege willful violations of the statute." [citing numerous cases] … In light of the overwhelming weight of authority which suggests that the complaint sufficiently alleges willful violations of FACTA, the Court overrules defendants' motion to dismiss for failure to state a claim.").

Further, Defendant's argument that it could not have violated the statute because its counsel thinks its reading is plausible is premature, requiring this Court to go beyond the factual allegations contained in the complaint.  *Harris*, 2007 WL 3046162, *3; *Hospitality Plus,* 532 F.

Supp. 2d at 963 ("We are only concerned with the sufficiency of the complaint and defendant's argument goes beyond the complaint, asking us to consider its interpretation of the statute.").

Defendant's argument that it did not reasonably believe that FACTA's requirements applied to the e-mail receipt it sent to the Plaintiff is baseless. Defendant's own conduct in truncating the digits of Plaintiff's credit card number down to the last four digits shows that this argument lacks any merit. Defendant was utilizing special computer software when processing the transactions with Plaintiff and other customers, to eliminate the exact personal information that FACTA mandated be eliminated from a receipt. This conduct on its part conclusively establishes that it knew the transactions it was engaging in with its customers on-line over the internet were subject to FACTA.

The Court should deny Defendant's motion because Plaintiff has sufficiently alleged Defendant's "willfulness" in violating FACTA.

**<u>CONCLUSION</u>**

Because Plaintiff's Class Action Complaint is sufficiently pleaded, the Court should deny Defendant's Motion to Dismiss pursuant to Rule 12(b)(6).


September 18, 2009.                    Respectfully submitted,

                                       s/ Phillip A. Bock
                                       One of the Attorneys for Plaintiff

Brian J. Wanca                         Phillip A. Bock
Jonathan A. Irwin                      Tod A. Lewis
ANDERSON + WANCA                       BOCK & HATCH, LLC
3701 Algonquin Road, Suite 760         134 N. La Salle Street, Suite 1000
Rolling Meadows, IL  60008             Chicago, IL  60602
Telephone: 847/368-1500                Telephone:  312/658-5500